B27 (Official Form 27) (12/09)

# UNITED STATES BANKRUPTCY COURT
Middle District of Pennsylvania

In re Angela Lynn Sobiech,
      Debtor

Case No. 5:16-bk-02877-JJT
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: NBT Bank, National Association

2. Amount of the debt subject to this reaffirmation agreement:
   $ 6,423.23  on the date of bankruptcy      $ 6,648.23  to be paid under reaffirmation agreement

3. Annual percentage rate of interest:  3.89 % prior to bankruptcy
   3.89 % under reaffirmation agreement ( ✔ Fixed Rate ___ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 191.92 per month for 36 months

5. Collateral, if any, securing the debt: Current market value: $ 8,950.00
   Description:  2012 Chevrolet Malibu

6. Does the creditor assert that the debt is nondischargeable? ___ Yes ✔ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | | Debtor's Income and Expenses as Stated on Reaffirmation Agreement | |
|---|---|---|---|
| 7A. Total monthly income from Schedule I, line 16 | $ 2,506.60 | 7B. Monthly income from all sources after payroll deductions | $ 2,506.60 |
| 8A. Total monthly expenses from Schedule J, line 18 | $ 2,249.20 | 8B. Monthly expenses | $ 2,057.28 |
| 9A. Total monthly payments on reaffirmed debts not listed on Schedule J | $ 0.00 | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses | $ 191.92 |
| | | 10B. Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | $ 257.40 |

876563

Case 5:16-bk-02877-JJT    Doc 15    Filed 10/28/16    Entered 10/28/16 12:40:15    Desc
Main Document      Page 1 of 14

11. Explain with specificity any difference between the income amounts (7A and 7B):
    N/A

12. Explain with specificity any difference between the expense amounts (8A and 8B):
    The only difference between the expense amounts in 8A and 8B is that 8A includes the debt that is owed to the Creditor that is the subject of this Reaffirmation Agreement and 8B does not include this debt.

    If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

    _____          _____
    Signature of Debtor (only required if          Signature of Joint Debtor (if applicable, and only
    line 11 or 12 is completed)                    required if line 11 or 12 is completed)

Other Information

☐　Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
　　_X_Yes　　　　　____No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
　　_X_Yes　　　　　____No

### FILER'S CERTIFICATION

　　I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_____
Signature

Thomas J. MacNeely, Attorney for Creditor
Print/Type Name & Signer's Relation to Case

☐ Presumption of Undue Hardship

☑ No Presumption of Undue Hardship

(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement)

## LOCAL BANKRUPTCY FORM 4008-1(a)

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**IN RE:**
Angela Lynn Sobiech

**CHAPTER** 7

**CASE NO.** 5 - 16 -bk- 02877-JJT

**Debtor(s)**

### REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A; Disclosures, Instructions, and Notice to Debtor (pages 1–5)

☑ Part D: Debtor's Statement in Support of Reaffirmation Agreement

☑ Part B: Reaffirmation Agreement

☐ Part E: Motion for Court Approval

☑ Part C: Certification by Debtor's Attorney

*[Note: Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement.]*

**Name of Creditor:** NBT Bank, National Association

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

1. **DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

**SUMMARY OF REAFFIRMATION AGREEMENT**
    This Summary is made pursuant to the requirements of the Bankruptcy Code.

AMOUNT REAFFIRMED

The amount of debt you have agreed to reaffirm   $ 6,648.23*

*includes $225.00 for attorneys' fees

***The amount of debt you have agreed to reaffirm includes al fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.***

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____ %.

– *And/Or* –

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %;

b.  If the debt is an extension of credit other than under an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: ___3.89___ %.

*– And/Or –*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %;

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items on the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 2012 Chevrolet Malibu | $12,286.92 (original amount of loan) |

*Optional — At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $ _____ is due on _____ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

- - - *Or* - - -

Your payment schedule will be: _____ (number) payments in the amount of $_____ each, payable (monthly, annually, weekly, etc.) on the _____ (day) of each _____ (week, month, etc.), unless altered later by mutual agreement in writing.

- - - *Or* - - -

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

2. **INSTRUCTIONS AND NOTICE TO DEBTOR**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7.  If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

### YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (canceled).

**Frequently Asked Questions:**

<u>What are your obligations if you reaffirm the debt?</u> A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

<u>Are you required to enter into a reaffirmation agreement by any law?</u> No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

<u>What if your creditor has a security interest or lien?</u> Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

Rev. 12/01/11
P.6

NOTE: When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of reaffirming a debt when the hearing on the reaffirmation agreement is held.

## PART B: REAFFIRMATION AGREEMENT

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement.

Retail Installment Contract dated July 26, 2013.
(A copy of the Contract is attached hereto.)

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:

*Angela Sobiech*
(Print Name)

*Angela Sobiech*
(Signature)

Date: 10/18/16

Co-borrower, if also reaffirming these debts:

_____
(Print Name)

_____
(Signature)

Date: _____

Accepted by creditor:

NBT Bank, National Association
(Print Name of Creditor)

52 South Broad Street, Norwich, NY 13815
(Address of Creditor)

_____
(Signature)

_____
(Printed name and Title of Individual Signing for Creditor)

Date of creditor acceptance: _____

**NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of reaffirming a debt when the hearing on the reaffirmation agreement is held.

**PART B: REAFFIRMATION AGREEMENT**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement.

Retail Installment Contract dated July 26, 2013.
(A copy of the Contract is attached hereto.)

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:

Angela Sobiech
(Print Name)

*Angela Sobiech*
(Signature)

Date: 10/18/16

Co-borrower, if also reaffirming these debts:

_____
(Print Name)

_____
(Signature)

Date: _____

Accepted by creditor:

NBT Bank, National Association
(Print Name of Creditor)

52 South Broad Street, Norwich, NY 13815
(Address of Creditor)

*Alaina Denz*
(Signature)

Alaina Denz Special Assets Specialist
(Printed name and Title of Individual Signing for Creditor)

Date of creditor acceptance: _____

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

    I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

    ☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: John E. Thompson

Signature of Debtor's Attorney: */s/ John E. Thompson*

Date: 10/18/16

Rev. 12/01/11
P.8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete numbered paragraphs 1 and 2, <u>OR</u>, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship."]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ __2,506.60__ , and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements*total $ __2,057.28__ leaving $ __449.32__ to make the required payments on this reaffirmed debt. *, but excluding my monthly payment on the debt that is the subject of this Reaffirmation Agreement,

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: *Angela Strauch*
(Debtor)

_____
(Joint Debtor, if any)

Date: 10/18/16

— *Or* —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
(Debtor)

_____                     Date: _____
(Joint Debtor, if any)

## PART E: MOTION FOR COURT APPROVAL
*[To be completed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]*

### MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes)*:

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed: _____
(Debtor)

_____
(Joint Debtor, if any)

Date: _____

**RETAIL INSTALMENT CONTRACT**

Meaning Of Some Words: In this Contract, the words "I," "me," "we" and "my" mean anyone signing this Contract as a Buyer, Co-Buyer and/or Co-Signer. The words "you" and "your" mean the Seller or, after the Seller transfers its rights under this Contract, anyone having those rights.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all scheduled payments. | Total Sale Price The total cost of my purchase on credit, including my downpayment of $ 2000.00 |
|---|---|---|---|---|
| 3.89% | $ 1531.32 | $ 12286.92 | $ 13818.24 | $ 15818.24 |

My Payment Schedule will be:   e means estimate

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 191.92 | Monthly, beginning 09/09/2013 |
| N/A | $ N/A | N/A |

Security: I am giving a security interest in the motor vehicle being purchased.
Filing Fees: $ N/A   N/A
Non-Filing Insurance: $ N/A   N/A

Late Charge: If a payment is late more than 10 days, I will be charged 12% of the payment.
Prepayment: If I pay off early, I will not have to pay a penalty.
My Contract documents will have additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

In this Contract, you are the Seller.
SIMMONS ROCKWELL NISSAN, INC
784 COUNTY RTE 64    ELMIRA, NY    14903
Name    Address    Zip Code

We are the Buyer(s). ANGELA L SOBIECH 484 CAYUTA AVE WAVERLY NY 14892
Name(s)    Address(es)    Zip Code(s)

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee named below.

If there is more than one Buyer, each of us will be obligated, separately and together, for all sums due you and the performance of all agreements as provided in this Contract.

Description of Vehicle: (See Insurance Requirements section)

| N/U | Year and Make | Model | Body Style | No. Cyl. | Serial Number |
|---|---|---|---|---|---|
| USED | 12 CHEVROLE MALIBU | | 4DSD | 4 | 1G1ZC5EU7CF183401 |

Equipped ☐ A.T. ☐ P.S. ☐ AM-FM Radio   Other _____
with ☐ A.C. ☐ P.B. ☐ P.W.

I have traded in the following vehicle: _____ N/A   N/A
Year and Make   Description

Net Trade-In $ N/A    Cash Downpayment + $ 2000.00
Rebate or Discount + $ N/A    Total Downpayment = $ 2000.00

Property Insurance: I am required to obtain and maintain insurance on the Collateral, endorsed to protect you as loss-payee, BUT I MAY CHOOSE THE AGENT OR BROKER OF MY CHOICE.

TITLE HOLDER OF COLLATERAL: NBT BANK NA , REGISTRANT: ANGELA L SOBIECH
PHYSICAL DAMAGE: Comprehensive $ N/A, deductible. Collision $ N/A, deductible.
INSURANCE COMPANY: ENCOMPASS   Policy No.: _____   Effective Date 07/26/2013
AGENT: Name & Address OWEN AGENCY   328 BROAD ST WAVERLY NY, 1489   Telephone No: 6075658121

I guarantee that the required insurance coverage as shown in the Insurance Requirements section was obtained from the agent named above.
Liability insurance coverage for bodily injury and property damage is not included or provided for in this Contract.
Vendor's Single Interest Insurance: If this box is checked ☒, you require Vendor's Single Interest Insurance. I may choose the person through whom Vendor's Single Interest Insurance is to be obtained. This insurance is for the sole protection of the Assignee and my interest is not covered. If obtained through you, the cost of such insurance is $ 95.00.

PROMISE TO PAY: I agree to pay you the Total Sale Price for the Vehicle by making the Cash Downpayment, assigning the Trade-In, if shown above, on or before the date of this Contract, and paying you the Amount Financed, plus the credit service charge (called "interest" in this Contract) at the Annual Percentage Rate shown above. Payments are due on or before the same day of each month as the first payment date. Payments must be made at any office of:

NBT BANK, NATIONAL ASSOCIATION, 52 So. Broad St., Norwich, NY 13815   (the "Assignee")

The Last Scheduled Payment Rider if attached hereto is intended to be incorporated herein as part of the retail instalment contract relating to the retail instalment sale of the motor vehicle more fully described in the section entitled "Description of Vehicle" contained in the retail instalment contract.

☐ If this box is checked, the Last Scheduled Payment Rider mentioned directly above is attached and I acknowledge receipt of same.

Group Credit Life and Group Credit Health Insurance Coverage is voluntary and not required to obtain this financing and will not be provided unless I request them in writing and agree to pay the additional cost. I may select the insurer to provide this coverage. I may terminate my coverage by written notice to the Seller identified above, or, if I choose another insurer, by written notice to that insurer. The effective date of coverage, if purchased from the Seller named above, is the date of this contract. I understand this coverage is not purchased from NBT Bank, N.A. or from any of its divisions, including Pennstar Bank. If I have a claim or question about the policy, I will contact the Seller identified above, or if I choose another insurer, I will contact that insurer. If I prepay this contract, I will contact the Seller identified above for any rebate that may be due me, or if I choose another insurer, I will contact that insurer. I understand I am responsible for timely payments.

I AGREE THAT THE PROVISIONS ON THE BACK ARE PART OF THIS CONTRACT. (Continued on reverse side.)

**Itemization of Amount Financed**
| | |
|---|---|
| Date | 07/26/2013 |
| Cash Price | $ 12999.00 |
| Cash Downpayment | —$ 2000.00 |
| Rebate or Discount | —$ N/A |
| Value of Trade-In | —$ N/A |
| Lien Payoff to: | |
| | +$ N/A |
| Unpaid Cash Price Balance 1 =$ | 10999.00 |
| For Group Credit Life Insurance* 2 +$ | N/A |
| For Group Disability Insurance* 3 +$ | N/A |
| To Public Officials 4 +$ | 78.00 |
| Vendor's Single Interest Insurance 5 +$ | 95.00 |
| For Sales Tax 6 +$ | 1039.92 |
| GAP Waiver* 7 +$ | N/A |
| To DOC FEE 8 +$ | 75.00 |
| To N/A 9 +$ | N/A |
| Amount Financed (1 thru 9) =$ | 12286.92 |

*you may be retaining a portion of this amount

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

NOTICE TO THE BUYER: 1. Do not sign this Agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled-in copy of this Agreement. 3. Under the law, you have the right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either: (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing insurance on the motor vehicle provided for in this Contract from an agent or broker of your own selection.

Seller agrees to this Contract, including terms and conditions on back, and assigns it to the Assignee named above in accordance with the first Assignment printed on the reverse side, unless otherwise marked.

I HAVE RECEIVED A COPY OF THIS CONTRACT SIGNED BY THE SELLER. RETAIL INSTALMENT CONTRACT.

Seller SIMMONS ROCKWELL NISSAN, INC
(Firm Name)
By _____
Registrant N/A

Buyer _/s/ Angela Sobiech_
Co-Buyer _____
Co-Buyer _____

**CO-SIGNER NOTICE**

I agree to pay the debt identified above, although I may not personally receive any property, services or money. I may be sued for payment, although the person who receives the property, services or money is capable of paying the debt. This notice is not the writing that obligates me to pay the debt. I should know that the Total of Payments listed above does not include Finance Charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorneys' fees, or other charges that are stated in the Contract. I will also have to pay some or all of these costs and charges. If the debt is ever in default, that fact may become a part of my credit record. I have read the Retail Instalment Contract and the Co-Signer(s) Notice.

N/A
Co-Signer

Case 5:16-bk-02877-JJT   Doc 15   Filed 10/28/16   Entered 10/28/16 12:40:15   Desc
Main Document   Page 13 of 14

**Collateral:** As Collateral for this Contract (to protect you if I don't pay), I give you a security interest in the Vehicle being purchased. A security interest means that, if one of the events of default occurs, you can take the Vehicle and under certain circumstances sell it, as is more fully explained in the "Right to Demand Payment in Full" and the "Right to Repossess." Vehicle shall include tires, parts, equipment, replacement parts or additions to the Vehicle or any vehicle insurance refunds or any insurance proceeds resulting from loss or damage to the Vehicle. If I default (see "Right to Demand Payment in Full" section), you have the right to apply any sums that I have on deposit with you and any group insurance refunds which you receive against any balance that I owe.

**How The Finance Charge Is Figured:** The Finance Charge, which consists only of interest, has been computed upon the basis that I will pay all instalments on the scheduled due dates. If any instalment is received later than the scheduled due date, I will be obligated to pay such additional amounts as may become payable by reason of the accrual of interest calculated daily upon the unpaid balance of the Amount Financed. In the event that any instalment is made in advance of the scheduled due date, the interest charges will be reduced accordingly. The amount of this decrease or increase will be reflected in the final payment. I shall have the right to prepay the unpaid principal balance in full or in part at any time provided that payments are first applied to accrued interest as of the date of prepayment.

**Possible Refunds on Group Credit Life and/or Disability Insurance Premiums and on Service Contract Premiums:** If this Contract is paid in full prior to the final payment due date, I may be due a refund. I understand that I must contact the Seller identified on the front side of this document, from whom I purchased the policy(s), to obtain any refund I may be due.

**Late Charge:** If I fail to pay any instalment for more than 10 days from the date it is due, I will pay a late charge of 12% of the unpaid instalment.

**Return Check Charge:** If any check, draft, or other item I send you in payment of my obligation on this Contract is returned for insufficient funds, I agree to pay you a Return Check Charge of $20.00.

**Collection Costs:** If you hire an attorney to bring a lawsuit to collect any amount owing under this Contract, I will pay you attorneys' fees up to 15% of the amount then due, plus court costs, or such lesser amounts as the court allows.

**Insurance Requirements:** I agree at all times to keep the Vehicle insured with comprehensive, fire and theft, and a minimum amount of deductible collision insurance satisfactory to you, endorsed to protect you with a licensed insurance company. If I fail to insure my Vehicle, you may do so and I agree to pay the cost. I agree that any insurance moneys payable by reason of damage to or loss of the Vehicle shall be paid directly and solely to you and may be used to pay my debt to you. If the Vehicle is lost or damaged, you can use the insurance proceeds (money) to replace or repair it, or to repay any amounts I owe you, and I agree that, if necessary, you can settle any insurance claims or sign any insurance checks on my behalf. I agree that loss, damage to or destruction of the Vehicle shall not affect my duty to make the payments under this Contract.

**Further Advances Secured:** If I fail to pay fees, taxes or the costs necessary to keep the Vehicle in good condition and repair, you may, if you alone choose, advance any sums necessary to protect your interest in the Vehicle. Any such advances will be secured by the Vehicle and will be subject to a Finance Charge at the Annual Percentage Rate of this Contract.

If I fail to maintain required property insurance, you may, if you choose, obtain equivalent limits of replacement insurance. This replacement insurance will protect your interests, but you are under no obligation to obtain replacement insurance, which will also protect my interests. THE INSURANCE YOU PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE ME LESS COVERAGE THAN INSURANCE I COULD PURCHASE MYSELF. Any amount you advance will be secured by the Vehicle and will be subject to a Finance Charge at the Annual Percentage Rate of this Contract. At the time of the advance, I will be notified in writing of my options to repay the advance:

(i) in full within ten days of the notice;
(ii) along with my monthly payment;
(iii) if available, as a single monthly payment, one month following payment of all other amounts due under the Contract;
(iv) if available, as additional monthly payments, not exceeding the monthly payments due under the Contract;

Your payments on my behalf will not cure my failure to perform my promises in this Contract.

**Payment After All Amounts Owing Become Immediately Due:** Under certain circumstances, you can declare all amounts owing under this Contract immediately due. If you do and all amounts owing are paid or you sue for them and obtain a judgment, you will calculate what I owe as if I were going to pay in advance.

**Right to Demand Payment in Full:** Upon the following events of default, you can require that the entire balance of my loan be paid at once, without prior notice or demand, if:
1. I do not pay an instalment on time; or
2. I break one of my promises under this Contract; or
3. I have made any false or misleading statement on this Contract and/or credit application; or
4. Your name does not appear as the only "lienholder" (claim) on any certificate of title issued now or in the future; or
5. The Vehicle is lost, stolen, or damaged without adequate insurance coverage; or sold, or given away, or seized; or
6. I file bankruptcy or if any proceeding is instituted to seek relief from my debts; or
7. I die or become legally unable to manage my affairs; or
8. Something else happens that you reasonably feel affects my ability to pay the remaining instalments when due; or
9. The Vehicle is seized by a third party (including, without limitation, a municipality or other governmental or quasi-governmental entity) because of the Vehicle's alleged or actual involvement in actual or alleged criminal or unlawful activity and/or where a forfeiture proceeding has been instituted in/before any federal, state or local court or any administrative body.

**Right to Repossess:** You can repossess (take) the Vehicle if one of the events of default (listed in the "Right to Demand Payment in Full" section) occurs. After my default, I will deliver the Vehicle, upon your request, or you can enter the premises where it is kept and take it yourself (as permitted by law), and you need not notify me before you do this. You can sell the Vehicle after repossession and apply the proceeds to the balance of what I owe after deducting your reasonable repossession, storage, repair, preparation for sale and selling expenses. You will send me, within 7 days, notice by mail of any sale of the Vehicle. If my Default consists solely of a failure to make timely payments, I may have certain rights to stop the sale of my Vehicle even after you repossess it if I make timely tender of the amount required to redeem the Vehicle.

To recover any articles I claim are not part of the Collateral but were contained in the Vehicle, I must notify you in writing within 7 days after repossession. Failure to claim and take possession of these items promptly will be an abandonment of them.

If the sale does not cover all that I owe, I will be responsible for the amount still owed. If there is any surplus money, it will be refunded to me.

**Optional Insurance or Service Contracts:** This Contract may contain charges for optional insurance or service contracts. If the Vehicle is repossessed, I agree that you may claim benefits under these contracts and terminate them to obtain funds for unearned charges.

**Care of Vehicle:** I agree to keep the Vehicle in good condition and repair; not to remove it from the address at which it is presently kept without your prior written consent; not to sell or transfer it or use it as collateral in another transaction; not to use the Vehicle for hire or permit its use in any illegal manner; not to allow someone else to seize the Vehicle or create a lien (claim) on it; and to give you immediate written notice of loss or damage to the Vehicle.

**Trade-In and Downpayment:** I guarantee that I own the vehicle traded in, if any, and that it is free from any lien or security interest not shown in the "Trade-In" section of the Itemization of Amount Financed. I also represent that I have made the downpayment and have not borrowed it.

**Title and Security Interest:** If the Vehicle is already titled or is to be titled, I guarantee that I am or will be the registered owner and your security interest shall appear as the only security on any certificate of title now or in the future issued. I agree that you can apply for certificates of title to show your security interest and I agree to assist you in doing so. I also give you permission to file a financing statement (notice of your security interest filed for public record) covering your security interest without my signature on it.

**Waivers and Releases:** You can waive or delay enforcing any of your rights without losing them. You can waive or delay enforcing a right as to one of us without waiving it as to the other. You need not give anyone notice of the waiver, delay or release. Your failure to file a security interest, failure to keep the Vehicle insured, release of a security interest or granting extensions of time of payment shall not affect my obligation under this Contract.

**Warranties and Representations:** I promise that the funds (Collateral) obtained will be used in connection with lawful activities, pursuits, endeavors, ventures or businesses, and I will not use the funds (Collateral) to violate any law that could result in forfeiture proceedings being instituted.

I agree to promptly inform you of any proposed proceedings or actual proceeding which would subject the funds (Collateral) to forfeiture to any governmental body.

**Applicable Law:** This Contract shall be governed by New York Law except for its conflict of law provisions. If any provision is found to be ineffective under any law or regulation, the remainder will still be binding and effective.

(The following notice shall not apply to any sale for other than personal, family, or household use.)

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**WARRANTIES:** If this Contract involves the sale of a new Vehicle, the Seller makes no warranty, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, unless Seller has given Buyer a separate written warranty or unless Seller enters into a service contract with Buyer within 90 days from the date of this Contract, or except for any warranty set forth in the Buyer's Guide for Used Cars.

IF THIS CONTRACT INVOLVES THE SALE OF A USED VEHICLE, AS DEFINED UNDER 16 CFR PART 455, THE INFORMATION I SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

## ASSIGNMENT

For value received, the Seller hereby sells, transfers and assigns to Assignee named on the face hereof, its successors and assigns, all right, title and interest in this Contract and to the Vehicle described in this Contract and to all moneys due and to become due under this Contract and any Guarantee made in connection with this Contract. Seller warrants that this Contract is genuine, unamended and enforceable without defense or counterclaim, that all parties to the Contract are over eighteen years of age and have legal capacity to execute the Contract, that the Buyer (or Co-Buyer) has accepted delivery of the Vehicle and it is registered and titled to the Buyer, that the Cash Downpayment has been paid to Seller and has not been borrowed to Seller's knowledge, that the Assignee is acquiring a purchase money security interest in the Vehicle free and clear of any lien, claim and encumbrance, and that, if Assignee requests Seller to do so and pays Seller the appropriate fee, the Seller will immediately cause Assignee's name to appear on the Certificate of Title as the first and only lienholder. If Buyer has indicated he/she wishes any Group Credit Insurance, Seller warrants that such coverage has been obtained and paid for and agrees to hold Assignee harmless from any claims with respect to such insurance, and promptly to make the appropriate refunds if such insurance is canceled and/or the Contract is prepaid. Upon a breach of any of the provisions in this Assignment or if the Buyer, Co-Buyer or Guarantor notifies the Assignee (orally or in writing) that they have any claim or defense arising out of this Contract or under Sections 198-a or 198-b of the New York General Business Law—whether or not there is a default in payment—Seller agrees, on demand, immediately to repurchase this Contract for the unpaid balance, including earned Finance Charges as of the date of repurchase. Seller agrees to hold harmless and indemnify Assignee for any loss sustained as a result of any claim or defense Buyer, Co-Buyer or Guarantor may have against Seller, whether or not this loss is sustained as a result of a judicial determination. Seller hereby consents to any extensions of time for payment; modification of terms; release or substitution of parties or Vehicle; and agrees that the Assignee's failure to perfect its lien on the Vehicle will not affect this Assignment.

## FULL RECOURSE ASSIGNMENT

Seller agrees, in addition to the warranties above, that in the event of default by Buyer in the full payment on the due date thereof of any instalment payable under the Contract or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, upon demand by Assignee, forthwith repurchase the Contract from Assignee for a repurchase price in cash equal to the full unpaid balance of the Contract as of the date of such repurchase, including any earned Finance Charge.

_____
Seller

_____  _____
Title                          Date